UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TOBIE RACYHELLE WHIPPLE,<br><br>Plaintiff,<br><br>v.<br><br>C.R. BARD, INC., and BARD PERIPHERAL VASCULAR INC.,<br><br>Defendants. | Case No. 19-cv-01883-RFB-BNW<br><br>**ORDER** |

## I. INTRODUCTION

Before the Court is the Defendants' Motion for Summary Judgment. ECF No. 101. For the following reasons, the motion is granted in part and denied in part.

## II. PROCEDURAL BACKGROUND

A Master Complaint for Damages for Individual Claims was filed in the case of In Re Bard IVC Filters Product Liability Litigation, 2:15-md-02641, in the United States District Court for the District of Arizona. The Master Complaint includes 17 counts and a request for punitive damages. On August 30, 2016, the Plaintiff filed a Master Short Form Complaint in the United States District Court for the District of Arizona. The Plaintiff also filed a Second Amended Master Short Form Complaint in that district. ECF No. 1. On October 24, 2019, the case was transferred to this Court. ECF No. 6. On March 20, 2023, Plaintiff filed a Third Amended Complaint. ECF No. 100. On March 23, 2023, the Defendants filed the present Motion for Summary Judgment and a Motion in Limine to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Daniel Peterson. ECF Nos. 101, 102. On the same day, the Plaintiff filed a Motion in Limine to Exclude

the Opinions and Testimony of Defendant's Expert Dr. Jeffrey Kalish. ECF No. 103.

On January 11, 2024, the Court held a motion hearing to address the Motion for Summary Judgment, the Motions in Limine and various other motions. However, this hearing was rescheduled as all counsel were not present. ECF No. 123. On February 15, 2024, the Court held the hearing. ECF Nos. 125, 126.

At the hearing, the Motions in Limine were denied and Plaintiff Kurt Chistensen was dismissed from the case. Plaintiff's counsel conceded the claims for negligent misrepresentation, negligence per se, failure to recall, and consortium. Plaintiff's counsel requested that the Court consider the strict product liability design defect, negligent design defect, failure-to-warn, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, and fraudulent concealment. Plaintiff's counsel did not articulate any request for the Court to consider the strict product liability manufacturing defect or the consumer fraud claims. The Court considers the identified claims for summary judgment, in turn.

### III. FACTUAL BACKGROUND

#### A. Undisputed Facts

Based on its review of the evidence on file, the Court finds the following undisputed facts.

The Defendants, C.R. Bard, Inc. and Bard Peripheral Vascular Inc., produce a series of prescription medical filters placed in the inferior vena cava ("IVC") designed to prevent large blood clots in the deep veins of the body from travelling to the heart or lungs and causing a pulmonary embolism. These filters have struts which anchor in the walls of the IVC. Some of these filters are designed to be permanent and some are temporary and can be removed.

On April 9, 2009, Plaintiff Whipple had a retrievable filter, the G2X Filter (the "Filter"), implanted in her IVC to help prevent a potential pulmonary embolism in advance of an upcoming procedure. In March of 2016, Whipple was hospitalized with complaints of nearly a month of nausea, vomiting, shortness of breath, fevers, chills, and other complaints. Testing revealed that Plaintiff had pneumonia and an antibiotic-resistant urinary tract infection. During this hospitalization, imaging was conducted which revealed that the Filter had fractured and one of the

Filter's struts embolized to Plaintiff's left lung. Plaintiff's doctor recommended removal of the Filter, but not of the embolized strut.

On April 1, 2016, Whipple followed up with a new primary care physician and reported worsening fatigue for about a year and low grade fevers. On April 27, 2016, the Filter was removed. However, the strut remains in her lung. On November 2, 2019, Whipple was diagnosed with Chronic Fatigue Immune Dysfunction Syndrome ("CFS").

### B. Disputed Facts

Based on the record, the Court finds the following disputed fact. The parties dispute whether the Defendants provided proper warnings of the risks associated with the Filter.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

///
///
///
///

## V. DISCUSSION

### A. Design Defect – Strict Products Liability

Count three of Plaintiff's Complaint puts forth a design defect claim on strict products liability grounds. Generally, the Defendants argue that all of Plaintiff's claims fail for insufficient evidence of causation because there is no expert evidence that an alleged defect in the Filter caused Plaintiff's injuries. Specifically, the Defendants argue that this claim fails as a matter of law because the warning provided with the Filter shields the manufacturer from liability, and there is no design which completely avoids the risks associated with the product. The Defendants also argue that Dr. McMeeking opines that an alternative Filter which Bard produces would have been a safer alternative and this argument is prohibited by the MDL Agreement. The Plaintiff counters that she merely needs to show that a safer design was feasible at the time of manufacture and Dr. McMeeking testified as to alternative design features for the Filter she received.

A strict product liability claim requires that a plaintiff show that the product had a defect which rendered it unreasonably dangerous, the defect existed at the time the product left the manufacturer, and the defect caused the plaintiff's injury. Fyssakis v. Knight Equip. Corp., 826 P.2d 570 (Nev. 1992). In order to impose legal liability, proximate cause must be shown between the design defect of the product and the injury – that is, the plaintiff must show that the design defect in the product was a substantial factor in causing her injury. Price v. Blaine Kern Artista, Inc., 893 P.2d 367, 370 (Nev. 1995). Claims of design defect, for both strict liability and negligence, in Nevada are governed by the consumer-expectation test. See Ford Motor Co. v. Trejo, 402 P.3d 649, 657 (Nev. 2017).

Under the consumer-expectation test, a product is defectively designed if it "fail[s] to perform in the manner reasonably to be expected in light of its nature and intended function and [is] more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community." See id. at 653 (quoting Ginnis v. Mapes Hotel Corp., 470 P.2d 135, 138 (Nev. 1970)). A plaintiff may support this claim with evidence regarding alternative designs that were commercially feasible at the time of manufacture, other accidents involving analogous products, post-manufacture design changes, and post-manufacture industry standards.

See Ford, 402 P.3d at 657. Also, evidence that a product lacked adequate safety features or that a safer alternative design was feasible at the time of manufacture will support a strict liabilities claim and present a genuine issue of fact. Fyssakis v. Knight Equip. Corp., 826 P.2d 570, 572 (Nev. 1992).

First, the Court addresses the insufficient evidence of causation argument. In Dr. McMeeking's assessment of the filter designs, he opines that there are deficiencies in the design of the product wherein the filter is "unstable after implantation … and it is very likely that it will always tilt, except in the rarest circumstance in which the arms perfectly align with the wall of the vena cava …." He further expounded that the Defendants "did not adhere to professional and industry standards in the engineering activities involved in the conceptualization, design and analysis of the [F]ilter." And the Defendants "did not use design and analysis methods that conformed to the state of the art in its industry at the time the G2 filter was designed …." These defects caused migration, perforation, and fracture of the Filter. As a result of this movement of the Filter, Plaintiff had to have the device removed. Dr. Peterson attributes Plaintiff's chronic fatigue to the retrieval of the Filter. Additionally, Dr. Peterson states that the triggering event for Plaintiff's CFS was the removal of the Filter. The Court finds that there is a disputed issue of a material fact with regard to causation.

Second, the Court addresses the failure as a matter of law argument. As noted, evidence of a safer alternative design that was feasible at the time of the product's manufacture presents a disputed issue of a material fact. See Fryssakis, 826 P.2d at 572. The Plaintiff's expert asserts this precise point. Dr. McMeeking asserts that "the design is defective, and it will lead to filter tilt…." He further opines that there were better design features for the Filters that were available at the time they were on the market including a two-tier design, an upper basket configuration, a sheath chamfer, and loop breaks. These are alternative designs that were commercially feasible and present in another Bard filter. The Defendants assert that the MDL advises that Dr. McMeeking's testimony cannot be used to opine that the alternative filter would have been a safer alternative for any particular plaintiff. This is correct. However, the Court construes Plaintiff's position to be highlighting the alternative designs which were available to the Defendants. Thus, the Court allows

1  Plaintiff's arguments. Moreover, viewing these arguments in the light most favorable to the
2  Plaintiff, the Court finds that there is a genuine dispute of a material fact.
3  Accordingly, summary judgment is denied with regard to the strict product liability design
4  defect cause of action.

### B. Design Defect – Negligence

Plaintiff's fourth cause of action puts forth a design defect claim on negligence grounds. As mentioned, the Defendants argue that all claims fail for lack of causation evidence. Specifically, the Defendants argue that this claim fails as a matter of law because the warnings provided shields the manufacturer from liability. The Plaintiff responds that Dr. McMeeking identified alternative design features which would have improved the safety of the G2X Filter and the product warnings did not identify all of the issues experienced by the Plaintiff.

In order to bring a negligence claim, a plaintiff must show that the defendant had a duty to exercise due care towards the plaintiff; the defendant breached the duty; the breach was an actual cause of the plaintiff's injury; the breach was the proximate cause of the injury; and the plaintiff suffered damage. See Perez v. Las Vegas Medical Center, 805 P.2d 589 (Nev. 1991). In order to impose legal liability, proximate cause must be shown between the design defect of the product and the injury – that is, the plaintiff must show that the design defect in the product was a substantial factor in causing her injury. Price v. Blaine Kern Artista, Inc., 893 P.2d 367, 370 (Nev. 1995). Claims of design defect, for both strict liability and negligence, in Nevada are governed by the consumer-expectation test. See Ford Motor Co. v. Trejo, 402 P.3d 649, 657 (Nev. 2017).

Under the consumer-expectation test, a product is defectively designed if it "fail[s] to perform in the manner reasonably to be expected in light of its nature and intended function and [is] more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community." See id. at 653 (quoting Ginnis v. Mapes Hotel Corp., 470 P.2d 135, 138 (Nev. 1970)). A plaintiff may support this claim with evidence regarding alternative designs that were commercially feasible at the time of manufacture, other accidents involving analogous products, post-manufacture design changes, and post-manufacture industry standards. See Ford at 657. Warnings do shield manufacturers from liability unless the defect could have

been avoided by a commercially feasible change in design that was available at the time of manufacture. See Robinson v. G.G.C., Inc., 808 P.2d 522, 525 (Nev. 1991).

First, the Court addresses Defendant's lack of causation evidence argument. The same analysis presented in the design defect under strict liability section applies here. Thus, this argument fails. Second, the Court addresses the argument that this claim fails as a matter of law. In this case, the warnings do not wholly shield the Defendants from liability. As detailed in the prior section, Dr. McMeeking provided testimony regarding the multiple ways in which the Filter's defects could have been avoided using design changes that were available at the time of manufacture.

Accordingly, summary judgment is denied with regard to the negligent design defect cause of action.

### C. Failure-to-Warn

Plaintiff's seventh cause of action puts forth a failure-to-warn claim. In addition to the lack of causation argument, Defendants assert that this claim fails as a matter of law because Nevada follows the learned-intermediary doctrine and the duty was to warn the physician, not the patient, and Plaintiff cannot show any failure caused her injuries. The Plaintiff counters that the Defendants failed to properly warn the physician of the complications associated with its product.

In order to bring a failure-to-warn claim, the Plaintiff must demonstrate the same elements as in other strict product liability cases. See Motor Coach Indus. v. Khiabani, 493 P.3d 1007, 1011 (Nev. 2021) (quoting Rivera v. Philip Morris, Inc., 209 P.3d 271, 275 (2009)) (quotation marks omitted). She must show that the product had a defect which rendered it unreasonably dangerous, the defect existed at the time the product left the manufacturer, and the defect caused the plaintiffs injury. Id. The lack of warning functions as the relevant defect. Id. Strict liability may be imposed even though the product is faultlessly made if it was unreasonably dangerous to place the product in the hands of the user without suitable and adequate warning concerning safe and proper use. Id. at 1011-12 (quoting Lewis v. Sea Ray Boats, Inc., 65 P.3d 245, 249 (2003)) (quotation marks omitted). The burden of proving causation can be satisfied in failure-to-warn cases by demonstrating that a different warning would have altered the way the plaintiff used the product

or would have prompted the plaintiff to take precautions to avoid the injury. Id. at 1012 (quoting Rivera, 209 P.3d at 275) (quotation marks omitted). Nevada law requires that warnings adequately communicate any dangers that may flow from the use or foreseeable misuse of a product. Yamaha Motor Co., U.S.A. v. Arnoult, 955 P.2d 661 (Nev. 1998). Liability may be established in situations where the defendant has reason to anticipate that danger may result from a particular use of their product and fails to warn adequately of such a danger. Id. The product sold without a warning is in a defective condition. Id.

Historically, the learned-intermediary doctrine has been allowed under Nevada law to insulate drug manufacturers from liability in products-liability lawsuits. Klasch v. Walgreen Co., 264 P.3d 1155, 1158 (Nev. 2011) (en banc). Under the learned-intermediary doctrine, a drug manufacturer is immune from liability to a patient taking the manufacturer's drug so long as the manufacturer has provided the patient's doctor with all relevant safety information for that drug. Id. At this time, the Nevada Supreme Court has adopted this doctrine in only one circumstance holding that a pharmacist does not owe a duty to warn a customer of a medication's generalized risks because the physician who prescribed the medication is in the best position to do so. Id. at 1158-59. The state has neither adopted nor rejected the doctrine in the context of a medical device manufacturer in a strict products liability failure-to-warn case. Therefore, this Court must predict how the Nevada Supreme Court would decide on this issue. See Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007) ("The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum."). In making this determination, the Court may rely upon intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia, 379 F.3d 557, 560 (9th Cir. 2004).

In Klasch, the court explained that the doctor is in the best position to warn the customer of a given medication's generalized risks. 264 P.3d at 1159. Similar to the position of the pharmacist, a medical device manufacturer is not in the best position to determine whether its device is appropriate for a specific patient. Additionally, this district court has found the doctrine

to apply in other similar product liability cases. See, e.g., Flores v. Merck & Co., No. 3:21-cv-00166-MMD-CLB, 2022 U.S. Dist. LEXIS 46442 (D. Nev. Mar. 16, 2022); Flowers v. Eli Lilly & Co., Case No. 3:14-cv-00094-LRH-VPC, 2015 U.S. Dist. LEXIS 91298, 2015 WL 12622058, at *2-*3 (D. Nev. July 10, 2015); Phillips v. C.R. Bard, Inc., Case No. 3:12-cv-00344-RCJ-WGC, 2014 U.S. Dist. LEXIS 174506, 2014 WL 7177256, at *9 (D. Nev. Dec. 16, 2014). Hence, this Court predicts that the Nevada Supreme Court would apply the learned-intermediary doctrine in this case.

First, the Court addresses the lack of causation evidence argument. Dr. Hansen indicates that if he had been warned of additional issues with the Filter, he would have elected to place Plaintiff in a surveillance program. This disputed evidence creates a genuine issue of disputed fact that a different warning would have prompted him to take precautions to avoid the injury. See Motor Coach Indus. v. Khiabani, 493 P.3d 1007, 1012 (Nev. 2021). Therefore, Defendant's argument fails.

Second, the Court addresses the argument that this claim fails as a matter of law. As noted, under the learned-intermediary doctrine, a drug manufacturer is immune from liability to a patient taking the manufacturer's drug so long as the manufacturer has provided the patient's doctor with all relevant safety information for that drug. Klasch v. Walgreen Co., 264 P.3d 1155, 1158 (Nev. 2011) (en banc). In this case, Dr. Hansen identified several different areas of safety information, relevant in determining whether the Filter would be appropriate for a patient, of which he was not made aware. These areas included the caudal migration, risk of fracture, and tilt. The Court thus finds that there is a genuine issue of a material fact.

Accordingly, summary judgment is denied as to the failure-to-warn cause of action.

### D. Breach of Express Warranty

Plaintiff's tenth cause of action puts forth a breach of express warranty claim. The Defendants argue that Plaintiff does not have evidence of causation or evidence of privity among the parties. The Plaintiff responds that she is not required to prove vertical privity.

///

///

In order to bring a breach of warranty claim, a plaintiff must show that a warranty existed, the defendant breached the warranty, and the defendant's breach was the proximate cause of the loss sustained. Nev. Contract Servs. v. Squiress Cos. Inc., 68 P.3d 896 (Nev. 2003).

NRS Section 116.4113 sets forth the ways in which an express warranty can be created between a seller and a purchaser, and then transferred to subsequent purchasers. Allied Fid. Ins. Co. v. Pico, 656 P.2d 849 (Nev. 1983). Section 116.4113, the statute which details the express warranty, states that:

> Express warranties made by any seller to a purchaser of a unit, if relied upon by the purchaser, are created as follows:
>
> (a) Any affirmation of fact or promise that relates to the unit, its use or rights appurtenant thereto, improvements to the common-interest community that would directly benefit the unit or the right to use or have the benefit of facilities not located in the common-interest community creates an express warranty that the unit and related rights and uses will conform to the affirmation or promise.

The plain language of Section 116.4113 requires that the creation of an express warranty be made by the seller to a purchaser. Allied holds that, under this section, actual reliance on an express warranty is not a prerequisite for breach of warranty, as long as the express warranty involved became a part of the bargain.

While Nevada does not require vertical privity in actions for personal or property injury caused by defective products, it still requires the horizontal privity mandated by statute. Zaika v. Del E. Webb Corp., 508 F. Supp. 1005, 1012 (1981) (citing Hiles Co. v. Johnston Pump Co. of Pasadena, 560 P.2d 154, 157 (Nev. 1977)); Amundsen v. Ohio Brass Co., 513 P.2d 1234 (Nev. 1973); Long v. Flanigan Warehouse Co., 382 P.2d 399 (Nev. 1963)).

Vertical privity is privity between all parties in the distribution chain from the initial supplier of the product to the ultimate purchaser or end user. Horizontal privity describes the relationship between the original supplier and a non-purchasing party who is affected by the product, such as the family of the ultimate purchaser or a bystander. For horizontal privity the injured party is trying to place himself in the position of the buyer and take advantage of warranties made to the buyer. Hiles Co. v. Johnston Pump Co., 560 P.2d 154, fn. 5 (Nev. 1977) (citing Nordstrom, Sales § 91 at 282-83 (1970)). Nevada still requires horizontal privity to recover

economic damages for breach of warranty. Mandeville v. Onoda Cement Co., 67 F. App'x 417 (9th Cir. 2003).

Here, Plaintiff does not present any arguments that it has any evidence of the required horizontal privity. Instead, she relies upon the case of Vacation Village to assert that she does not have to allege this type of privity. Vacation Vill. v. Hitachi Am., 874 P.2d 744 (Nev. 1994). Plaintiff asserts that through this case, the Nevada Supreme Court adopted strict liability in tort for persons injured by defectively manufactured or designed products, whether they injured party was in privity with the seller or not. In this manufacturer warranty case, the Nevada Supreme Court determined that a lack of vertical privity between the buyer and manufacturer does not preclude an action against the manufacturer for the recovery of economic losses caused by breach of warranties. Id. at 747 (quoting Hiles Co. v. Johnston Pump Co., 560 P.2d 154, 157 (1977)) (quotation marks omitted). However, this does not relieve Plaintiff of her duty to show evidence of horizontal privity.

Accordingly, summary judgment is granted with regard to the breach of express warranty cause of action.

### E.  Breach of Implied Warranty

Plaintiff's eleventh cause of actions puts forth a breach of implied warranty claim. The Defendants argue that Plaintiff has no evidence of causation or privity between the parties, and that Plaintiff did not notify the Defendants of the breach as required by Nevada law. The Plaintiff counters that she does not need to prove vertical privity.

The Court finds that its previous reasoning and holding as to the breach of warranty claim apply with equal force to the breach of implied warranty claim. Accordingly, summary judgment is granted with respect to the breach of implied warranty cause of action.

### F.  Fraudulent Misrepresentation

Plaintiff's twelfth cause of action puts forth a fraudulent misrepresentation claim. The Defendants assert that this claim is merely a repackaged failure-to-warn claim; and Plaintiff fails to show evidence of reliance and causation. Additionally, this tort is only available for those suffering pecuniary injury in the context of a business transaction.

In order to bring a fraudulent misrepresentation claim, a plaintiff must show (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. Guilfoyle v. Olde Monmouth Stock Transfer Co., 335 P.3d 190, 197 (2014) (citing Bulbman, Inc. v. Nev. Bell, 825 P.2d 588, 592 (1992)). This claim requires a showing of damages caused by reliance or concealment. Guilfoyle, 335 P.3d at 197.

First, the Court addresses the issue of reliance. Defendants argue that there is no evidence that the Plaintiff or Dr. Hansen relied upon any representations by Bard. However, Dr. Hansen explained that he read the product warnings associated with the Filter before he began to use those devices. Dr. Hansen noted that if he had been aware of additional concerns about the Filter he would have selected an alternative. Additionally, the Plaintiff indicates that she relied on information provided by Dr. Hansen as it related to the Filter. This presents a triable issue of a material fact.

Second, the Court addresses the repackaging arguments. The Defendants cite to no binding authority in their argument that the fraudulent misrepresentation claim is merely a repackaged failure-to-warn claim. Instead, they assert that the learned-intermediary doctrine applies and these claims should be subsumed by the strict liability claims. The Court finds this position unpersuasive.

Third, the Court addresses the business transaction argument. The Defendants argue that this claim is only available in the context of a business transaction. Nevada has adopted the definition of negligent misrepresentation provided in the Second Restatement of Torts:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1387 (Nev. 1998); see also Restatement (Second) of

Torts § 522.

While the Nevada Supreme Court has found that the tort of negligent misrepresentation applies "only to business transactions," the rule does not require that the business transaction be between the supplier of the false information and those justifiably relying on the information. Antonacci v. Sparks, No. 2:14-cv-01876-LDG-CWH, 2016 U.S. Dist. LEXIS 35346 (D. Nev. Mar. 17, 2016) (citing Barmettler, 956 P.2d at 1387). This claim merely requires that the defendant supplied the information as part of "his business, profession or employment, or in any other transaction in which he has a pecuniary interest," and that the information reach "the person or one of a limited group of persons for whose benefit and guidance" the information is supplied. Restatement (Second) of Torts § 552. Here, the warnings provided by the Defendants were provided as part of their business and the information was relied upon by both the treating physician and the patient. Thus, this claim can proceed in this case.

Accordingly, summary judgment is denied with regard to the negligent misrepresentation cause of action.

### G. Fraudulent Concealment

Plaintiff's thirteenth cause of action puts forth a fraudulent concealment claim. The Defendant argues that this is a repackaged failure-to-warn claim and there was no reliance on the Defendant's representations.

In order to bring a fraudulent concealment claim, a plaintiff must show that (1) the defendant concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, that is, he must have concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than he would if he knew the fact; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and, finally, (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damages. Dow Chem. Co. v. Mahlum, 970 P.2d 98 (Nev. 1998).

The Court finds that its reasoning with respect to fraudulent misrepresentation applies with

Case 2:19-cv-01883-RFB-BNW   Document 127   Filed 03/30/24   Page 14 of 14

equal force here. Accordingly, summary judgment is denied as to the fraudulent concealment claim.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that the Defendants' Motion for Summary Judgment [ECF No. 101] is **GRANTED in part and DENIED in part**.

Summary judgment is granted as to Count 10 (Breach of Express Warranty) and Count 11 (Breach of Implied Warranty). These claims are dismissed. Summary judgment is denied as to Count 3 (Strict Products Liability – Design Defect), Count 4 (Negligence – Design Defect), and Count 7 (Negligence – Failure to Warn), Count 12 (Fraudulent Misrepresentation), and Count 13 (Fraudulent Concealment).

**DATED:** March 30, 2024



**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**